## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **MARCUS SHAMILLYON JACKSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 17-03082-JWB-GEB** |
| ) | |
| **DONALD ASH, Sheriff, Wyandotte** ) | |
| **County Sheriff's Department, et al,** ) | |
| ) | |
| **Defendants.** ) | |

## <u>REPORT AND RECOMMENDATION</u>

This matter is before the Court on Plaintiff's Amended Complaint (**ECF No. 29**) and Plaintiff's Response (**ECF No. 31**) to this Court's November 16, 2018 Memorandum and Order and Order to Show Cause (ECF No. 28). Because Plaintiff's Amended Complaint and Response fail to address the concerns raised not only in the November 16, 2018 Memorandum and Order and Order to Show Cause, but also in the Court's earlier December 22, 2017 Memorandum and Order and Order to Show Cause (ECF No. 5), the undersigned Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), issues the following report and recommendation of **DISMISSAL**.

## I.    Background

### A.    Original Complaint

On May 11, 2017, Plaintiff filed a Complaint alleging civil rights violations pursuant to 42 U.S.C. § 1983.[1]  Plaintiff's claims therein stem from his state criminal proceedings in Wyandotte County, Kansas where Plaintiff was convicted of an October 8, 2015 aggravated burglary and fleeing or attempting to elude a police officer.[2]  Before describing Plaintiff's claims in more detail, a brief summary of Plaintiff's criminal proceedings is in order.

On October 9, 2015, a Kansas City, Missouri Police Department detective submitted an affidavit to the Wyandotte County District Court seeking an arrest warrant for Plaintiff regarding the above-mentioned crimes.[3]  According to this affidavit, Plaintiff and an associate, Carl Williams, emerged as suspects pursuant to an investigation by the police regarding a string of recent burglaries in the Kansas City area.  The police determined Plaintiff and Williams had pawned items stolen during those burglaries.

Accordingly, on October 8, 2015, the police were conducting surveillance on Plaintiff, who was driving a Buick Rendezvous.  During this surveillance, a 911 call came in about a burglary in progress in the area where Plaintiff's vehicle was located.  The homeowners who made the call were awakened by their dog growling and, upon

---

[1] ECF No. 1.
[2] *Id.*; ECF No. 1-1, pp. 72-91 (exhibits containing jury instructions and verdict); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").
[3] ECF No. 1-1, pp. 18-21 (copy of the affidavit).

investigation, found a person dressed in all black in the living room.  The individual then ran out an open sliding glass door.  One homeowner saw two other persons in the backyard who took off running after the first individual. The homeowner noticed several items missing from a side table near the sliding glass door, and found a gun magazine in the backyard.[4]

Shortly thereafter, an officer located Plaintiff's Buick Rendezvous fleeing the area and tried to stop it, but the Buick fled.  After being pursued by the police for a time, the Buick crashed into a train bridge and caught on fire.  At least one occupant fled the vehicle. Police approached the vehicle to look for other occupants, and found Carl Williams, injured, lying next to the car.  The police took Williams into custody.[5]

Meanwhile, Plaintiff was captured on a police vehicle's in-car video system fleeing the scene on foot.  Plaintiff was eventually found hours later by a police officer responding to a suspicious person call.  A shoe was recovered near the Buick, and when Plaintiff was taken into custody he was missing a shoe.  The shoe he was wearing matched the shoe left at the scene.[6]

After Plaintiff was taken into custody, he was transported to the Detective Bureau for an interview by a Detective Fithian.  After Plaintiff was read his Miranda rights, he asked to have a lawyer present for any questioning.  After this request, the interview ended, and Plaintiff was booked into the Wyandotte County Jail on a 48-hour hold.[7]

---

[4] *See id.* regarding the details stated in this paragraph.
[5] *Id.*
[6] *Id.*
[7] *Id.*

As stated above, on October 9, 2015, the affidavit for the arrest warrant was presented to a Wyandotte County state court judge. The judge signed the arrest warrant that same day (October 9), which was a Friday.[8] The following Tuesday, October 13, 2015, the arrest warrant was filed in state court and issued to the Wyandotte County Sherriff, who arrested Plaintiff that day.[9] Plaintiff made a first appearance in court the next day, October 14, 2015, and bond was set at $50,000.00.[10]

Plaintiff's case proceeded to trial in March of 2017.[11] Williams testified against Plaintiff,[12] and Plaintiff was convicted by a jury of both aggravated burglary and fleeing/eluding.[13] Plaintiff went through several court-appointed attorneys, but was represented at trial by Mark Birmingham.[14] While several Wyandotte County District Court judges made rulings in Plaintiff's case, the primary judge was Judge J. Dexter Burdette.[15] Judge Burdette presided over Plaintiff's jury trial, and as will be relevant here, denied a pretrial Motion to Suppress Arrest and Warrant filed by Plaintiff. Judge Burdette ruled sufficient evidence was present in the affidavit and arrest warrant to show probable cause for Plaintiff's arrest.[16] Plaintiff was sentenced on December 1, 2017[17] and is

---

[8] *Id.* at p. 22 (copy of signed arrest warrant).

[9] *Id.* at pp. 3, 31.

[10] *Id.*

[11] *Id.* at p. 13 (copy of docket sheet showing jury trial dates).

[12] ECF No. 1, pp. 4, 7.

[13] ECF No. 1-1, pp. 72-91 (exhibits containing jury instructions and verdict).

[14] *Id.* at pp. 3-16 (copy of docket sheet showing attorneys representing Plaintiff).

[15] *Id.* (copy of docket sheet showing state court judges).

[16] *Id.* at p. 49 (copy of journal entry regarding motion to suppress).

[17] ECF No. 5, p. 10.

currently incarcerated at Norton Correctional Facility.  Plaintiff has been in jail since he was taken into custody on October 8, 2015.[18]

Returning to the substance of Plaintiff's Complaint filed in this Court on May 11, 2017, Plaintiff asserted various § 1983 claims against multiple defendants.  First, Plaintiff alleged the Wyandotte County District Court judges involved in his criminal proceedings engaged in judicial misconduct.  Second, Plaintiff claimed each of his court-appointed defense attorneys provided ineffective assistance of counsel.  Third, Plaintiff alleged the Wyandotte County prosecutors involved in his case engaged in malicious prosecution.[19]

And finally, Plaintiff asserted unlawful detention claims against the Wyandotte County Unified Government, Wyandotte County Sheriff Donald Ash, Wyandotte County Deputy Jeffrey Fewell, an unknown Wyandotte County Sheriff's Department Deputy, and Detective Fithian (collectively referred to as "Wyandotte County Government Defendants").  Specifically, Plaintiff claimed there was no probable cause to detain him on a 48-hour hold following his October 8, 2015 interview at the Detective Bureau.  And, although the 48-hour hold expired on October 10, 2015, Plaintiff alleged he continued to be held without probable cause until his arrest on October 13, 2015, in violation of his constitutional rights.  As relief, Plaintiff sought money damages and dismissal of his state criminal convictions with prejudice.[20]

---

[18] ECF No.  29, p. 6.
[19] *See generally* ECF No. 1.
[20] *Id.*

**B.    December 22, 2017 Memorandum and Order and Order to Show Cause**

On December 22, 2017, Senior District Judge Sam A. Crow entered a Memorandum and Order and Order to Show Cause ("MOSC I").[21] The MOSC I gave Plaintiff until January 22, 2018, to show cause why the claims against the Wyandotte County judges, Wyandotte County prosecutors, and defense attorneys should not be dismissed.[22]

Regarding the claims against the Wyandotte County judges and prosecutors, the Court explained these defendants are likely entitled to judicial immunity and prosecutorial immunity, respectively, and should be dismissed because Plaintiff alleged no facts suggesting any judge or prosecutor acted outside their judicial or prosecutorial capacities.[23] Regarding the claims against the defense attorneys, the Court noted Plaintiff failed to show they were acting under color of state law as required under § 1983 and court-appointed attorneys are generally not considered state actors.[24]

Regarding the Wyandotte County Government Defendants, the Court held it could not properly process Plaintiff's unlawful detention claims without additional information, and ordered those Defendants to prepare a *Martinez* Report.[25] But, the Court noted Plaintiff would not be entitled to damages on his unlawful detention claims if he was receiving credit for the time he served during any alleged illegal detainment period.[26]

---

[21] ECF No. 5.
[22] *Id.* at p. 12.
[23] *Id.* at pp. 7-8.
[24] *Id.*
[25] *Id.* at pp. 9-13.
[26] *Id*. at pp. 10-11.

On January 23, 2018, due to Plaintiff's failure to respond to the MOSC I by the January 22, 2018 deadline, the Court dismissed the named Wyandotte County judges, Wyandotte County prosecutors, and defense attorneys.[27]  On April 20, 2018, the Wyandotte County Government Defendants filed a *Martinez* Report stating Plaintiff's constitutional rights regarding the 48-hour hold were not violated because an arrest warrant was signed on October 9, 2015, within 48 hours of his initial arrest.  They reported that presumably the arrest warrant was not filed with the state court until the next Tuesday, October 13, 2015, because of the ensuing weekend (October 9 was a Friday) and the court being closed on Monday, October 12, 2015, due to a holiday.[28]

### C.    Plaintiff's July 4, 2018 Motion to Leave and Amend Complaint

On July 4, 2018, Plaintiff filed a Motion to Leave and Amend Complaint,[29] seeking to add claims regarding Detective Fithian directly lying in the October 9 affidavit submitted to procure his arrest.[30]  Plaintiff attached a proposed five-page Amended Complaint to his Motion (referred to herein as "Proposed Amended Complaint").[31]  Although Plaintiff failed to list any defendants in the caption of the Proposed Amended Complaint, the body of the pleading shows Plaintiff is making claims against Detective Fifthian and the other Wyandotte County Government Defendants previously mentioned.[32]

---

[27] ECF No. 8.
[28] ECF No. 13
[29] ECF No. 23.
[30] Plaintiff filed another Motion to Leave and Amend on September 7, 2018 (ECF No. 24) seeking to add allegations under the Federal Tort Claim Act in addition to his § 1983 claims.  The Court denied this request as futile because Plaintiff had not named any federal defendants as is required under the Act.  (*See* ECF No. 28, at pp. 2-3.)
[31] ECF No. 23-1.
[32] *Id.*

Similar to the original Complaint, Plaintiff's Proposed Amended Complaint claims he was unlawfully detained between October 8, 2015 and October 13, 2015 due to the actions of these Wyandotte County Government Defendants. Plaintiff additionally makes false arrest claims against Detective Fithian for lying or purposefully omitting important information from the arrest warrant affidavit. Plaintiff failed to list any relief in his Proposed Amended Complaint.[33]

### D.     November 16, 2018 Memorandum and Order and Order to Show Cause

On November 16, 2018, Judge Crow entered another Memorandum and Order and Order to Show Cause ("MOSC II"), which granted Plaintiff's July 4, 2018 Motion to Leave and Amend Complaint with certain caveats.[34]  The Court noted Plaintiff's Proposed Amended Complaint was not submitted using the court-approved form, failed to name any defendants in the caption, and failed to request any form of relief. The Court stated it would give Plaintiff an opportunity to resubmit his Amended Complaint on a court-approved form to fix these deficiencies, but also ordered Plaintiff to show cause why his Amended Complaint should not be dismissed based on previous rulings made in the MOSC I.[35]  The Court also informed Plaintiff that Judge Burdette's finding of sufficient evidence in the affidavit and arrest warrant to establish probable cause for his arrest would likely be subject to collateral estoppel, potentially dooming his false arrest claims.[36] The Court gave

---

[33] *Id.*
[34] ECF No. 28.
[35] *Id.* at pp. 3-5, 6-7.
[36] *Id.* at pp. 4-5.

Plaintiff until December 17, 2019 to file an Amended Complaint and respond to the MOSC II.[37]

### E.    Plaintiff's Amended Complaint

Plaintiff filed an Amended Complaint on December 10, 2018.[38]  While Plaintiff did use the court-approved form, add defendants to the caption, and list his requested relief, Plaintiff expanded his five-page Proposed Amended Complaint into a twenty-eight page, single-spaced Amended Complaint that not only adds new defendants and new claims, but also brings back defendants and claims already dismissed.[39]  In addition to the Wyandotte County Government Defendants named in his Proposed Amended Complaint, Plaintiff adds Kansas City, Kansas Police Detectives (fnu) Hrgota and (fnu) Santana; Wyandotte County Sheriff Deputies (fnu) Wooten and (fnu) Green; and reasserts claims against defense attorney Mark Birmingham and Judge Burdette.[40]

While Plaintiff's Amended Complaint is, at times, difficult to comprehend, it is clear he is claiming civil rights violations pursuant to 42 U.S.C. §§ 1983 and 1985(3).[41] Plaintiff's allegations, as gleaned by the Court, can be summarized into the following categories: (1) ineffective assistance of counsel claims against Mark Birmingham; (2) claims of bias against Judge Burdette based on rulings made during Plaintiff's criminal case; (3) unlawful detainment claims between the time period October 8, 2015 and October

---

[37] *Id.* at pp. 6-7.
[38] ECF No. 29.
[39] *Id.*
[40] *Id.*
[41] *Id.* at p. 1.

13, 2015; (4) false arrest claims regarding Detectives Fiathian, Hrgota, and Santana's alleged use of false evidence and false statements in the arrest warrant affidavit; and (5) new claims of excessive force and threats and failure to report the same against Defendants Fiathian, Hrgota, Santana, Green and Wooten.[42]

For relief, Plaintiff requests his criminal convictions be reversed and seeks over $17 million in damages.[43]

### F.    Plaintiff's Response to MOSC II

In addition to filing the Amended Complaint, Plaintiff filed a Response to the MOSC II.[44]  In the Response, Plaintiff states he did not receive the MOSC I until March of 2018 and would still like to pursue claims against Mark Birmingham, Judge Burdette and the Wyandotte County prosecutors.  Other than summarizing the same claims previously stated in the original Complaint and reasserted in the Amended Complaint as outlined above, Plaintiff does not state why he should be allowed to pursue his claims against Mr. Birmingham and Judge Burdette.  Regarding the prosecutors, Plaintiff states nothing other than his desire to pursue the previously dismissed malicious prosecution claims.  Similarly, to support his unlawful detention and false arrest claims, Plaintiff merely restates the same claims he asserts in the Amended Complaint.[45]

---

[42] *See generally id.*
[43] *Id.* at p. 28.
[44] ECF No. 31.
[45] *Id.*

### G.    Reassignment and Screening Requirement

On January 4, 2019, this case was reassigned from Judge Crow to District Judge John W. Broomes and the undersigned Magistrate Judge for all further proceedings.[46]  As stated in the MOSC I and II,[47] and pursuant to Prison Litigation Reform Act of 1995[48] (*see* specifically 28 U.S.C. § 1915A),[49] the Court is required to screen complaints filed by prisoners seeking relief against a government entity and its officers/employees.  And, also pursuant to that Act (*see* specifically § 1915A(b)(1)), the Court must dismiss a complaint if it fails to state a claim upon which relief may be granted.[50]  After a considerable and deliberate review, and keeping in mind Plaintiff's pro se status, the undersigned, for the reasons stated herein, finds Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted, and thus recommends dismissal.

## II.    Legal Standard

As stated above, pursuant to § 1915A(b)(1), the Court must dismiss a complaint if it fails to state a claim upon which relief may be granted. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person

---

[46] ECF No. 35.

[47] ECF No. 5, pp. 3-4; ECF No. 28, pp. 5-6.

[48] Pub. L. No. 104–134, April 26, 1996, §§ 801, 805, 110 Stat 1321.

[49] 28 U.S.C. § 1915A(a) (requiring screening of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.").

[50] 28 U.S.C. § 1915A(b)(1); *see also Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (Congress enacted the Prison Litigation Reform Act to bring under control the sharp rise in prisoner litigation in the federal courts); 28 U.S.C. § 1915(e)(2) (requiring screening for in forma pauperis proceedings).

acting under color of state law."[51]  Courts liberally construe pro se complaints and apply "less stringent standards than formal pleadings drafted by lawyers."[52]  In addition, courts accept all well-pleaded allegations in the complaint as true.[53]  On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate.[54]

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."[55]  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."[56]  The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face."[57]  The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[58]

---

[51] *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).

[52] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[53] *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).

[54] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

[55] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[56] *Twombly*, 550 U.S. at 555 (citations omitted).

[57] *Id*. at 555, 570.

[58] *Whitney v. New Mexico*,113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

III.    **Discussion**

A.    **Plaintiff's Claims against Wyandotte County Prosecutors, Wyandotte County Judge Burdette, and Defense Attorney Mark Birmingham.**

After Plaintiff failed to respond the MOSC I, the Court dismissed the above parties from this lawsuit.[59]  This alone, it should be noted, is enough to recommend dismissal of any renewed claims against these parties.  However, given Plaintiff's pro se status and statement in his Response to the MOSC II he did not receive the MOSC I until March of 2018, after the January 22, 2018 deadline, the Court will analyze Plaintiff's renewed claims.

In Plaintiff's Response to the MOSC II, Plaintiff reiterates his desire to pursue malicious prosecution claims against the Wyandotte County prosecutors.  However, the Response contains no explanation as to why his claims against the prosecutors should go forward given their absolute immunity regarding prosecutorial functions as explained in the MOSC I.[60]  Additionally, Plaintiff fails to name the prosecutors as defendants in his Amended Complaint, and fails to make allegations that the prosecutors, in pursuing Plaintiff's criminal case, were acting outside of their protected prosecutorial capacities.[61]  Therefore, to the extent any claims remain against any Wyandotte County prosecutors, the undersigned recommends **DISMISSAL**.

---

[59] ECF No. 8.
[60] ECF No. 5, p. 7.
[61] *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976) (holding that in "initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983").

Plaintiff also renews claims against state court defense counsel, Mark Birmingham. Plaintiff lists several reasons why he believes Mr. Birmingham gave him ineffective counsel, including failure to seek recusal of Judge Burdette, failure to object to certain evidence and call certain witnesses during trial, and lack of communication. However, Plaintiff does not explain how Mr. Birmingham is a state actor, which is required for any § 1983 claim as explained in the MOSC I.[62] Plaintiff does state Mr. Birmingham was a court-appointed attorney; however, such attorneys, even if paid for by the state, are not deemed state actors.[63] Therefore, it is recommended all claims against Mark Birmingham be **DISMISSED**.

As to Judge Burdette, Plaintiff reasserts claims of bias against him due to alleged dislike of Plaintiff filing pro se motions during the criminal proceedings. Plaintiff also alleges Judge Burdette violated his constitutional rights by admitting prior bad acts evidence at trial and failing to investigate possible conflicts and lack of communication issues between Plaintiff and Mr. Birmingham. However, Plaintiff fails to overcome the issue of judicial immunity as stated in the MOSC I:

> A state judge is absolutely immune from § 1983 liability except when the judge acts "in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (articulating broad immunity rule that a "judge will not be deprived of immunity because the action he took was in error, was

---

[62] ECF No. 5, pp. 7-8 (citing *Polk Cty. v. Dodson*, 454 U.S. 312, 318–19, 321–23 (1981); *Vermont v. Brillon*, 556 U.S. 81, 91 (2009); *Dunn v. Harper County*, 520 Fed. Appx. 723, 725-26, 2013 WL 1363797 at *2 (10th Cir. Apr. 5, 2013); and *Briscoe v. LaHue*, 460 U.S. 325, 330 n.6 (1983)).

[63] *See, e.g., Van Deelen v. Ramirez*, No. 00-4067-SAC, 2001 WL 789275, at *3 (D. Kan. May 1, 2001) ("Public defenders, private attorneys, and court-appointed attorneys are not state actors for § 1983 purposes. . . . Moreover, a private attorney, even if appointed and paid for by the state, is not acting under color of state law when performing his functions as defense counsel."); *Jenkins v. McBride*, 53 F.3d 342 (10th Cir. 1995) (upholding dismissal of plaintiff's § 1983 claims against court-appointed attorney).

done maliciously, or was in excess of his authority . . . ."); *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994). Only actions taken outside a judge's judicial capacity will deprive the judge of judicial immunity."[64]

Similar to the original Complaint, neither the Amended Complaint nor Response to the MOSC II allege any facts suggesting Judge Burdette acted outside of his judicial capacity.[65] Therefore, due to judicial immunity, it is recommended all claims against Judge Burdette be **DISMISSED**.

### B.   Plaintiff's Unlawful Detention Claims

Plaintiff claims he was unlawfully detained from October 8, 2015 (the date he was initially taken into custody by police) until October 13, 2015 (the date of his arrest pursuant to the arrest warrant). Plaintiff alleges Detective Fithian lacked probable cause to place a 48-hour hold on him after his interview ended on October 8, 2015. Plaintiff also claims he should have been released on October 10, 2015, after the 48 hours expired because no probable cause determination had been made at that time. Plaintiff asserts he repeatedly asked Wyandotte County deputies to release him after the 48 hours expired, but was refused. As such, Plaintiff alleges Defendant Sherriff Ash failed to have a policy in place for deputies to comply with one's constitutional rights upon expiration of a 48-hour hold.

However, as stated in the MOSCI, Plaintiff's unlawful detention claims face a major obstacle:

---

[64] ECF No. 5, p. 8.

[65] It should also be noted the Kansas Court of Appeals, in recently affirming Plaintiff's convictions, found no reversible error by the state court in allowing evidence of Plaintiff's prior bad acts at trial or by failing to inquire into possible conflicts between Plaintiff and Mr. Birmingham. *See State v. Jackson*, 434 P.3d 239, 2019 WL 491206, *3-6 (Kan. Ct. App. 2019).

Plaintiff was sentenced in state court on December 1, 2017. It is unclear whether Plaintiff received credit for the time he spent in custody following his initial arrest—the same time he now contends he was unlawfully detained. *See Ewell v. Toney*, 853 F.3d 911, 917 (7th Cir. 2017). ***"[A] section 1983 plaintiff may not receive damages for time spent in custody, if that time was credited to a valid and lawful sentence." Id. (citations omitted). Plaintiff must show that he was injured by the presumptively unreasonable delay of more than 48 hours. If Plaintiff is not entitled to seek damages related to his detention, then there is no injury that a favorable decision by a federal court may redress***.[66]

Nowhere in his Response to the MOSC II or Amended Complaint does Plaintiff address this issue. Plaintiff only states he has been jailed since October 8, 2015,[67] leading the Court to believe he is receiving credit for time served, and thus not entitled to seek damages related to his alleged unlawful detention. Without a redressable injury, Plaintiff lacks Article III standing to pursue these claims.[68]

Additionally, there is no evidence that a constitutionally sufficient and timely probable cause determination was not made on October 9, 2015 when the state court judge reviewed the affidavit and signed the arrest warrant.[69]  While the Fourth Amendment,

---

[66] ECF No. 5, p. 10-11 (emphasis added).

[67] Amended Complaint, ECF No. 29, p. 6.

[68] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Ewell v. Toney*, 853 F.3d 911, 917-18 (7th Cir. 2017) (holding plaintiff had no standing to press unlawful detention claim where she received credit for time served); *Bridewell v. Eberle*, 730 F.3d 672, 676-77 (7th Cir. 2013) (holding plaintiff could not receive damages for time spent in custody on a valid sentence).

[69] *See Fillmore v. Eichkorn*, 891 F. Supp. 1482, 1491-92, 1495-96 (D. Kan. 1995), *aff'd*, 77 F.3d 492 (10th Cir. 1996) (finding county's weekend procedure of having district attorney review the status of detainees on Sunday morning and either releasing them or submitting an arrest warrant affidavit to a judge to comply with the Supreme Court's 48 hour rule in *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991)); KSA § 22-2302(a) (stating that if a magistrate judge finds from sworn testimony there is probable cause to believe both that a crime has been committed and that defendant has committed it, a warrant for the arrest of the defendant shall issue); *Bridewell*, 730 F.3d at 676-77 (holding state court judge's finding of probable cause and denial of bail negated claims against the police for any alleged unlawful detention claim); *see* ECF No. 13-1 for a copy of the arrest warrant with an October 9, 2015 signature date.

16

which protects against unreasonable seizures, requires a judicial probable cause determination within 48 hours of a warrantless arrest and continuing detention, it does not require a particular format for the judicial determination or that the arrested person be present.[70]

Plaintiff, however, seems to assert some sort of fraud or conspiracy existed to "back-date" the warrant to October 9 to show the appearance of a probable cause determination within 48 hours. But, Plaintiff's allegations are conclusory and lack any supporting factual detail other than Plaintiff's belief the various defendants are biased against him because of his race and status as a "convicted felon."[71] A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."[72] To be facially plausible, the complaint must contain factual content from which a court can reasonably infer the defendants are liable for the misconduct alleged.[73] Plaintiff has not alleged facts from which the Court can reasonably infer a conspiracy to back-date the arrest warrant.

---

[70] *See, e.g., Fillmore,* 891 F. Supp. at 1495 ("The 48–hour rule does not require that the arrested person be present during the probable cause determination.") (citing *Garcia v. City of Chicago*, 24 F.3d 966, 969 (7th Cir.1994) cert. denied, 514 U.S. 1003 (1995)); *Lingenfelter v. Bd. of Cty. Comm'rs of Reno Cty., Kan*., 359 F. Supp. 2d 1163, 1169 (D. Kan. 2005) ("The determination of probable cause need not be made in an adversary hearing; traditionally it has been made by a magistrate in a non-adversary proceeding on hearsay and written testimony."); *Jones v. City of Santa Monica*, 382 F.3d 1052, 1055-56 (9th Cir. 2004) (explaining that a probable cause judicial determination after a warrantless arrest may be informal and non-adversarial) (citing *Gerstein v. Pugh*, 420 U.S. 103, 120-25 (1975)).
[71] *See, e.g.,* Amended Complaint (ECF No. 29) pp. 2, 7.
[72] *Bellmon*, 935 F.2d at 1110.
[73] *Payne v. Massachusetts Dep't of Revenue,* No. 12-4063-SAC, 2012 WL 2583384, at *1 (D. Kan. July 3, 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

For the above reasons, the undersigned recommends **DISMISSAL** of all of Plaintiff's unlawful detention claims.

### C.    Plaintiff's False Arrest Claims

Plaintiff claims his arrest was unlawful.  In support, he alleges Detective Fithian made false statements and used false evidence in making the arrest warrant affidavit. Plaintiff also alleges Detectives Hrgota and Santana conspired to get false statements from Carl Williams for use in the affidavit.

In the MOSC II, the Court noted Judge Burdette ruled there was sufficient evidence presented in the arrest warrant and affidavit to support probable cause for the arrest.[74]  This Court explained the state court's ruling may require the application of collateral estoppel upon final adjudication of the state court case.[75]  This is so because probable cause for the arrest would negate any false arrest claim.[76]  Neither Plaintiff's Amended Complaint nor Response to the MOSC II contain statements as to why collateral estoppel would not apply upon final adjudication.  This Court, however, notes Plaintiff's state court criminal case has not been finally adjudicated.  On February 8, 2019, the Kansas Court of Appeals upheld Plaintiff's convictions.[77]  But, the Kansas Appellate Courts' on-line case inquiry system

---

[74] ECF No. 28, pp. 4-5; *see also* ECF No. 1-1 at p. 49 for Judge Burdette's Journal Entry denying Motion to Suppress Arrest and Warrant.

[75] ECF No. 28, pp. 4-5.

[76] *See, e.g., Karr v. Smith*, 774 F.2d 1029, 1031 (10th Cir. 1985) (lack of probable cause is an essential element of a 1983 claim for unlawful arrest); *Dees v. Vendel*, 856 F. Supp. 1531, 1534 (D. Kan. 1994) ("The constitutional validity of a warrantless arrest depends upon whether the arresting officer had probable cause."); *Ewell*, 853 F.3d  at 919 ("Probable cause is an absolute defense to claims of wrongful or false arrest under the Fourth Amendment in section 1983 suits. . . . In other words, if an officer has probable cause to arrest a suspect, the arrest was not false.").

[77] *See Jackson*, 434 P.3d 239, 2019 WL 491206.

shows Plaintiff filed a Petition for Review on March 11, 2019.  Thus, collateral estoppel cannot yet apply.

However, the *Younger* abstention doctrine precludes this Court from interfering with pending state court proceedings.[78]   In determining whether *Younger* abstention applies, a court considers whether: "(1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies."[79]   The Court finds all three factors met here as Plaintiff's criminal case is ongoing, and the state court provides an adequate forum and has an interest in correcting any alleged violations of a state prisoner's federal rights.[80]

Additionally, as stated in the MOSC I and II, "before Plaintiff may proceed in a federal civil action for monetary damages based upon an invalid conviction or sentence, he must show that his conviction or sentence has been overturned, reversed, or otherwise called into question."[81]   For legal support, the Court cited *Heck v. Humphrey*, 512 U.S. 477 (1994).[82]   In that case, a pro se prisoner filed a § 1983 case in federal court seeking monetary damages while his state criminal conviction was being appealed in state court.

---

[78] *Jackson v. Ash*, No. 16-3124-SAC, 2016 WL 3541736, at *2 (D. Kan. June 29, 2016) (citing *Younger v. Harris*, 401 U.S. 37 (1971)).

[79] *Id.* at * 3 (citing *Weitzel v. Div. of Occupational & Prof'l Licensing of Dep't of Commerce of State of Utah*, 240 F.3d 871, 875 (10th Cir. 2001)).

[80] *See id.* at *2-3 (noting the *Younger* doctrine prevents the Court from deciding Plaintiff's federal habeas corpus petition).

[81] ECF No. 5, p. 5; ECF No. 28, p. 4.

[82] *Id.*

Among other claims, the § 1983 complaint alleged a state police investigator engaged in an "unlawful, unreasonable, and arbitrary investigation" leading to the plaintiff's arrest.[83]

In ruling on the case, the Supreme Court held:

[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . .  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.[84]

Applying these principles, the Supreme Court agreed with the lower courts, which found plaintiff's damage claims challenged the legality of his conviction, and affirmed dismissal because plaintiff could not show his state conviction had been invalidated.[85]

Similarly, because Plaintiff is seeking monetary damages and claims regarding the allegedly false statements and evidence used to arrest him are essentially a challenge to his convictions, he must show the convictions have been invalidated.  As explained above, Plaintiff is still appealing his state criminal case, so he cannot demonstrate that his convictions have been reversed.[86]

---

[83] *Heck v. Humphrey*, 512 U.S. 477, 479 (1994).

[84] *Id.* at 486–87.

[85] *Id.* at 490.

[86] Additionally, Plaintiff's previous application to this Court for a writ of habeas corpus was denied without prejudice for failing to exhaust state court remedies.  *See Jackson v. Ash*, Case No. 16-3124-SAC (D. Kan. July 12, 2016) (ECF No. 8).

Therefore, based on the above, the Court recommends Plaintiff's false arrest claims be **DISMISSED WITHOUT PREJUDICE.**[87]

### D.    Plaintiff's Request to have his Convictions Reversed

In the Amended Complaint, Plaintiff asks for reversal of his state court convictions. In both the MOSC I and II, the Court stated: "To the extent Plaintiff challenges the validity of his sentence or conviction, his federal claim must be presented in habeas corpus. However, a petition for habeas corpus is premature until Plaintiff has exhausted available state court remedies."[88]

Plaintiff's Amended Complaint is filed pursuant to §§ 1983 and 1985, and thus does not seek habeas corpus release under 28 U.S.C. § 2254.  But, even if it did, Plaintiff has not exhausted his available state court remedies as shown in the above section.  Plaintiff filed a Petition for Review with the Kansas Supreme Court on March 11, 2019, which is still pending.[89]  Therefore, to the extent Plaintiff's Amended Complaint challenges the validation of his state court convictions, **DISMISSAL WITHOUT PREJUDICE** is recommended.

---

[87] In *Heck*, the Supreme Court explained a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated.  *Heck*, 512 U.S. at 489–90.

[88] ECF No. 5, p. 5; ECF No. 28, p. 4.

[89] *See Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534–35 (10th Cir. 1994) ("The exhaustion requirement is satisfied if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a postconviction attack . . . . The exhaustion requirement is satisfied if the highest court exercises discretion not to review the case.") (internal citations omitted).

**E.      Plaintiff's Claims of Excessive Force and Threats Regarding Revoking His Miranda Rights and Refusals to Report the Same**

Plaintiff, for the first time in his Amended Complaint and without prior approval to include the same in his Amended Complaint, alleges that between October 8, 2015 and October 9, 2015, certain defendants used excessive force and threats to get Plaintiff to revoke his Miranda Rights.   Plaintiff also claims certain defendants refused to report the excessive force and threats despite Plaintiff asking them to do so.

Specifically, Plaintiff claims on October 8, 2015, after his interview with detectives ended because Plaintiff invoked his Miranda Rights, Detective Fithian and an unknown police officer took Plaintiff to a stairwell to convince him to change his mind about talking without a lawyer present.   Plaintiff claims Defendant Fithian physically and verbally (including making racial and sexual comments) assaulted him and threatened to keep him in jail until he could find incriminating evidence on Plaintiff.[90]   Plaintiff claims he told Defendant Deputy Green about this incident in the following days, but Defendant Green refused to report it.[91]   Plaintiff also claims he told Defendant Deputy Wooten about this alleged incident on October 9, 2015, but Defendant Wooten refused to report it as well.[92]

On October 9, 2015, Plaintiff claims Detectives Hrgota and Santana threatened more "fun talks in stairwells" like the one he had with Defendant Fithian if Plaintiff didn't agree to talk without a lawyer present.   Plaintiff states he responded to Defendants Hrgota and Santana by telling them he wanted an attorney and by asking them to report Defendant

---

[90] Amended Complaint, ECF No. 29, pp. 9-10.
[91] *Id.* at p. 2.
[92] *Id.* at p. 11.

Fithian's conduct. Plaintiff also claims Defendant Wooten was present during Defendants Hrogta's and Santana's statements and claims Defendant Wooten refused to report their actions.[93]

Even though Plaintiff has not formally moved to add these claims, the Court finds such request would be futile and recommends dismissal based on the statute of limitations. Plaintiff brings the above claims pursuant to §§ 1983 and 1985(3), and represents the complained of actions occurred on October 8, 2015 and October 9, 2015. However, the statute of limitations for §§ 1983 and 1985 claims is two years.[94] Plaintiff's Amended Complaint containing these claims was not filed until December 10, 2018, well past the October 2017 statute of limitations deadline.[95]

And, because the Amended Complaint is the first time Plaintiff is raising these claims, they cannot relate back to the date of the original Complaint under Fed. R. Civ. P. 15(c). To be considered timely filed, Rule 15(c) requires allegations in the amendment to relate back to "the conduct, transaction, or occurrence set out—or attempted to be set out—

---

[93] *Id.*

[94] *See, e.g., Hawkins v. Lemons*, No. 09-3116-SAC, 2009 WL 2475130, at *3 (D. Kan. Aug. 12, 2009), *aff'd*, 357 F. App'x 990 (10th Cir. 2009) (statute of limitations for §§ 1983 and 1985 actions is two years) (citing *Brown v. Unified School Dist. 501, Topeka Public Schools*, 465 F .3d 1184, 1188 (10th Cir.2006) and *Alexander v. Oklahoma*, 382 F.3d 1206, 1212 (10th Cir.), *rehearing denied*, 391 F.3d 1155 (10th Cir.2004), *cert. denied*, 544 U.S. 1044 (2005)).

[95] *See, e.g., Birdsong v. Unified Gov't of Wyandotte Cty./Kansas, City, Kan*., No. 13-2090-JAR, 2014 WL 105509, at *6 (D. Kan. Jan. 10, 2014) ("The Tenth Circuit has held that '[c]laims arising out of police actions toward a criminal suspect, such as arrest, interrogation, or search and seizure, are presumed to have accrued when the actions actually occur.'") (citing *Johnson v. Johnson Cnty. Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir.1991)); *Hawkins*, 2009 WL 2475130, at *3 ("Under federal law, the claim accrues when the plaintiff has a complete and present cause of action. . . . A § 1983 action accrues when facts that would support a cause of action are or should be apparent.") (internal quotation marks and citations omitted).

in the original pleading."[96]   This requirement gives defendants fair notice to anticipate litigation involving a specific factual situation.[97]   However, even if a new pleading shares similar elements to the original claim, it "cannot relate back if the effect of the new pleading is to fault the defendants for conduct **_different_** from that identified in the original complaint."[98]

The original Complaint, filed on May 11, 2017, did not mention these claims of excessive force, threats, or refusal to report.[99]   This alleged conduct was mentioned for the first time in the December 10, 2018 Amended Complaint, and is completely different conduct than the allegations surrounding Plaintiff's unlawful detention claims of being held more than 48 hours without probable cause.   Thus, the Court cannot conclude Plaintiff's original Complaint would have put Defendants Fithian, Green, Hrogta, Santana and Wooten on notice of these new allegations.[100]

Finally, the Court does not find equitable tolling applicable.   While the statute of limitations can be tolled for inmates "imprisoned for a term less than [their] natural life" if they do not have "access to the court for purposes of bringing an action,"[101] it does not

---

[96] Fed. R. Civ. P. 15(c)(1)(B).

[97] _Price v. McKee_, No. 12-1432-CM, 2013 WL 3388905, at *4 (D. Kan. July 8, 2013) (quoting _Reed v. Entercom Commc'ns Corp._, No. 04-2603-CM, 2006 WL 1174023, at *1 (D. Kan. Apr. 28, 2006)).

[98] _Full Life Hospice, LLC v. Sebelius_, 709 F.3d 1012, 1018 (10th Cir. 2013) (emphasis added); _Price_, 2013 WL 3388905, at *4 ("When an amendment is based on different facts, transactions, and occurrences, a claim in an amended pleading will not relate back.").

[99] Nor did Plaintiff's July 4, 2018 Motion for Leave and Amend Complaint and attached Proposed Amended Complaint (ECF No. 23) mention these new allegations, but even if they did, they would have been untimely filed for the reasons stated herein.

[100] _See, e.g., Gardiner v. McBryde_, No. 15-3151-DDC-JPO, 2018 WL 6715827, at *5 (D. Kan. Dec. 21, 2018) (finding new allegations of excessive force did not relate back to original pleading).

[101] _Tillman v. Creighton_, 248 F. App'x 970, 972 (10th Cir. 2007) (quotations and citation omitted).

appear Plaintiff lacks access to the Court as he has continually filed pleadings and other documents in the case since its inception on May 11, 2017.[102]  Additionally, plaintiff filed a Petition for Writ of Habeas Corpus with this Court on June 10, 2016 and has been appealing his convictions in state court, all while being incarcerated.[103]

For the above reasons, the undersigned recommends Plaintiff's claims regarding excessive force, threats and refusal to report be **DISMISSED**.

## IV.    CONCLUSION

After careful review, and being mindful Plaintiff proceeds pro se, the undersigned finds Plaintiff's Amended Complaint and Response to the MOSC II fail to address the concerns raised by Judge Crow in the MOSC I and MOSC II.  The undersigned also finds Plaintiff's new allegations in the Amended Complaint regarding excessive force, threats and refusal to report fail to state a claim upon which relief can be granted because the two-year statute of limitations for those claims has expired.  Therefore, it is recommended Plaintiff's Amended Complaint be dismissed for the reasons stated herein.

**IT IS THEREFORE RECOMMENDED** that the claims in Plaintiff's Amended Complaint alleging false arrest and challenging the validity of Plaintiff's state court convictions be **DISMISSED WITHOUT PREJUDICE** for the reasons outlined in Sections III.C. and III.D. It is recommended that all other claims in Plaintiff's Amended

---

[102] *See, e.g., Gardiner*, 2018 WL 6715827, at *6 (denying equitable tolling argument where plaintiff was able to file documents despite being incarcerated); *Hawkins*, 2009 WL 2475130, at *4, n.1.

[103] *See, e.g., Jackson*, 2019 WL 491206, at *4-6 (addressing issues raised in Plaintiff's pro se supplemental brief in his state appellate case).

Complaint be **DISMISSED WITH PREJUDICE** for the reasons outlined in Sections III.A., III. B., and III.E. above.

**IT IS FURTHER ORDERED** that a copy of this recommendation shall be mailed to Plaintiff by certified mail.  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), Plaintiff may file a written objection to these proposed findings and recommendations with the clerk of the district court within fourteen (14) days after being served with a copy of this report and recommendation.  Failure to make a timely objection waives appellate review of both factual and legal questions.[104]

**IT IS SO ORDERED**.


Dated at Wichita, Kansas this 22nd day of April, 2019.



s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge

---

[104] *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).